PRISONER'S CIVIL RIGHTS COMPLAINT (Rev. 05/2015)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE _____ DISTRICT OF TEXAS**
**_____ DIVISION**

**FILED**

August 26, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ CV

DEPUTY

Rickey L. McGee 2173658

Plaintiff's Name and ID Number

Wainwright Unit

Place of Confinement

CASE NO. W: 24-cv-A38

(Clerk will assign the number)

v.

T.D.C.J Director

Defendant's Name and Address

Warden Vernon Mitchell

Defendant's Name and Address

Warden Camorris Marshall

Defendant's Name and Address
( DO NOT USE "ET AL.")

_____

**INSTRUCTIONS - READ CAREFULLY**

**NOTICE:**

**Your complaint is subject to dismissal unless it conforms to these instructions and this form.**

1.  To start an action you must file an original and one copy of your complaint with the court. You should keep a copy of the complaint for your own records.

2.  Your complaint must be legibly handwritten, in ink, or typewritten. You, the plaintiff, must sign and declare under penalty of perjury that the facts are correct. If you need additional space, **DO NOT USE THE REVERSE SIDE OR BACKSIDE OF ANY PAGE.** ATTACH AN ADDITIONAL BLANK PAGE AND WRITE ON IT.

3.  You must file a separate complaint for each claim you have unless the various claims are all related to the same incident or issue or are all against the same defendant, Rule 18, Federal Rules of Civil Procedure. Make a short and plain statement of your claim, Rule 8, Federal Rules of Civil Procedure.

4.  When these forms are completed, mail the original and one copy to the clerk of the United States district court for the appropriate district of Texas in the division where one or more named defendants are located, or where the incident giving rise to your claim for relief occurred. If you are confined in the Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), the list labeled as "VENUE LIST" is posted in your unit law library. It is a list of the Texas prison units indicating the appropriate district court, the division and an address list of the divisional clerks.

Rev. 05/15

Previous Lawsuits cont.

|  | 8/22 | 5/23 |
| --- | --- | --- |
| Date of suit | | |
| Parties | Rickey L McGee | T.W.C.] Director |
| court | West | East |
| cause No: | 6:23-cv-111 | 6:22-cv-486 |
| deposition | | Pending |

**FILING FEE AND *IN FORMA PAUPERIS* (IFP)**

1. In order for your complaint to be filed, it must be accompanied by the statutory filing fee of $350.00 plus an administrative fee of $50.00 for a total fee of **$400.00.**

2. If you do not have the necessary funds to pay the fee in full at this time, you may request permission to proceed *in forma pauperis.* In this event you must complete the application to proceed *in forma pauperis*, setting forth information to establish your inability to prepay the fees and costs or give security therefor. You must also include a current six-month history of your inmate trust account. If you are an inmate in TDCJ-CID, you can acquire the application to proceed *in forma pauperis* and the certificate of inmate trust account, also known as *in forma pauperis* data sheet, from the law library at you prison unit.

3. The Prison Litigation Reform Act of 1995 (PLRA) provides "... if a prisoner brings a civil action or files an appeal *in forma pauperis,* the prisoner shall be required to pay the full amount of a filing fee." *See* 28 U.S.C. § 1915. Thus, the court is required to assess and, when funds exist, collect, the entire filing fee or a initial partial filing fee and monthly installments until the entire amount of the filing fee has been paid by the prisoner. If you submit the application to proceed *in forma pauperis*, the court will apply 28 U.S.C. § 1915 and, if appropriate, assess and collect the entire filing fee or an initial partial filing fee, then monthly installments from you inmate trust account, until the entire $350.00 statutory filing fee has been paid. (The $50.00 administrative fee does not apply to cases proceeding *in forma pauperis.)*

4. If you intend to seek *in forma pauperis* status, do not send your complaint without an application to proceed *in forma pauperis* and the certificate of inmate trust account. Complete all essential paperwork before submitting it to the court.

**CHANGE OF ADDRESS**

It is your responsibility to inform the court of any change of address and its effective date. Such notice should be marked "**NOTICE TO THE COURT OF CHANGE OF ADDRESS**" and shall not include any motion for any other relief. Failure to file a NOTICE OF THE COURT OF CHANGE OF ADDRESS may result in the dismissal of your complaint pursuant to Rule 41(b), Federal Rules of Civil Procedure.

I.    PREVIOUS LAWSUITS:

    A. Have you filed *any* other lawsuit in state or federal court relating to your imprisonment? ___/___YES ___NO

    B. If your answer to "A" is "yes", describe each lawsuit in the space below.  (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, giving the same information.)

        1. Approximate date of filing lawsuit: _____ 6/21 _____

        2. Parties to previous lawsuit:

           Plaintiff(s) _____ Rickey McGee _____

           Defendant(s) ___ Rodriquez, Beasley, Montenegro ___

        3. Court: (If federal, name the district; if state, name the county.) ___ Western ___

        4. Cause number: _____ 6:22-cv-00380 _____

        5. Name of judge to whom case was assigned: _____ Albright _____

        6. Disposition: (Was the case dismissed, appealed, still pending?) ___ pending ___

        7. Approximate date of disposition: _____

Rev. 05/15

II.    PLACE OF PRESENT CONFINEMENT: _Wainwright Unit_

III.    EXHAUSTION OF GRIEVANCE PROCEDURES:

Have you exhausted all steps of the institutional grievance procedure?    ✓ YES ___NO

Attach a copy of your final step of the grievance procedure with the response supplied by the institution.

IV.    PARTIES TO THIS SUIT:

A. Name and address of plaintiff: _Rickey L. McGee_
_2665 Prison Rd #1_
_Lovelady Tx 75851_

B. Full name of each defendant, his official position, his place of employment, and his full _mailing_ address.

Defendant #1: _T.D.C.J Director_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_Retaliation - Fail to protect, supervise - intentional infliction of emotional distress_

Defendant #2: _Warden Vernon Mitchell - Warden L. Marshall_
_Michael Unit_

Briefly describe the acts(s) or omission(s) of this defendant which you claimed harmed you.

_Fail to protect - train - supervise - deliberate indifferent medical need - IIED_

Defendant #3: _Lt. K. Foust    - Captain Brannan Erik_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_Excessive force - deliberate indiff. med. need - retaliation IIED_

Defendant #4: _Lt. Danel Lakin    - Medical Abdallah Issah_
_deliberate indifferent to medical need_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_deliberate indifferent to medical need - IIED_

Defendant #5: _Jordie Ruthledge    - Cornelius Smith_

Briefly describe the act(s) or omission(s) of this defendant which you claimed harmed you.

_Fail to protect - intervene  deliberate indifferent to med. need - IIED_

Rev. 05/15

3

V.    STATEMENT OF CLAIM:

State here in a short and plain statement the facts of your case, that is, what happened, where did it happen, when did it happen, and who was involved. Describe how <u>each</u> defendant is involved. <u>You need not give any legal arguments or cite any cases or statutes.</u> If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach extra pages if necessary, but remember the complaint must be stated briefly and concisely.  IF YOU VIOLATE THIS RULE, THE COURT MAY STRIKE YOUR COMPLAINT.

SEE BRIEF IN SUPPORT

VI.    RELIEF:

State briefly exactly what you want the court to do for you.    Make no legal arguments.  Cite no cases or statutes.

Compensatory Damages Award, Injunction Punitive Damages Award

VII.    GENERAL BACKGROUND INFORMATION:

A. State, in complete form, all names you have ever used or been known by including any and all aliases.

Rickey L McGee

B. List all TDCJ-CID identificaiton numbers you have ever been assigned and all other state or federal prison or FBI numbers ever assigned to you.

2173658 - 1654303 - 739569 - 25974-177

VIII.    SANCTIONS:

A. Have you been sanctioned by any court as a result of any lawsuit you have filed? ____YES ___NO

B. If your answer is "yes," give the following information for every lawsuit in which sanctions were imposed. (If more than one, use another piece of paper and answer the same questions.)

1.  Court that imposed sanctions (if federal, give the district and division): _____

2.  Case number: _____

3.  Approximate date sanctions were imposed: _____

4.  Have the sanctions been lifted or otherwise satisfied?                    ____YES ___NO

Rev. 05/15

C. Has any court ever warned or notified you that sanctions could be imposed?     ____ YES  ✓ NO

D. If your answer is "yes," give the following information for every lawsuit in which a warning was issued. (If more than one, use another piece of paper and answer the same questions.)

    1.  Court that issued warning (if federal, give the district and division): _____

    2.  Case number: _____

    3.  Approximate date warning was issued: _____

Executed on: _8/ 1 /24_
        DATE

                                       (Signature of Plaintiff)

## PLAINTIFF'S DECLARATIONS

    1.  I declare under penalty of perjury all facts presented in this complaint and attachments thereto are true and correct.
    2.  I understand, if I am released or transferred, it is my responsibility to keep the court informed of my current mailing address and failure to do so may result in the dismissal of this lawsuit.
    3.  I understand I must exhaust all available administrative remedies prior to filing this lawsuit.
    4.  I understand I am prohibited from brining an *in forma pauperis* lawsuit if I have brought three or more civil actions or appeals (from a judgment in a civil action) in a court of the United States while incarcerated or detained in any facility, which lawsuits were dismissed on the ground they were frivolous, malicious, or failed to state a claim upon which relief may be granted, unless I am under imminent danger of serious physical injury.
    5.  I understand even if I am allowed to proceed without prepayment of costs, I am responsible for the entire filing fee and costs assessed by the court, which shall be deducted in accordance with the law from my inmate trust account by my custodian until the filing fee is paid.

Signed this ____1____ day of _August_, 20 _24_.
           (Day)            (month)      (year)

                                       (Signature of Plaintiff)

**WARNING: Plaintiff is advised any false or deliberately misleading information provided in response to the above questions may result in the imposition of sanctions.  The sanctions the court may impose include, but are not limited to, monetary sanctions and the dismissal of this action with prejudice.**

Rev. 05/15

Each defendant is sued individually and in his official capacity. At all times mentioned in this complaint. Each defendant acted under the color of state law.

# FACTS

1. In the year 2014 plaintiff was confined inside of a T.D.C.J facility, namely Dalhart Unit. While at this unit plaintiff assaulted Officer Levida Boykin taking her mace and spraying her with said mace.

2. In this same year plaintiff discharged his sentence only to return to prison in the year 2017.

3. Plaintiff was transferred to Micheal Unit in the year 2020.

4. Fate would have it that at this unit it was truly a family affair as the ~~husand~~ husband of Lavida Boykin - Greg Boykin; the son Justin Boykin; and the daughter Toni Boykin all worked at Micheal Unit.

5. Each of these Officers and their co-workers were aware of the incident involving Levida Boykin being assaulted by plaintiff.

6. On June 04.2021 plaintiff was transferred to Hughes Unit in what is called a 'Emergency transfer'. According to transport Officer SGT. Jett the move was for plaintiff's "health and safety". Plaintiff was able to find out through discovery that Levida Boykin contacted Officials in the Regional department which prompted these officials to issue said Emergency transfer.

7. On July 15. 2021 plaintiff was sprayed in the face by Cody Rodriquez. Seconds before spraying plaintiff Officer Rodriquez stated : "This is for Mrs Boykin."

8. After multiple seizures plaintiff was taken over to the medical department where he was beaten and sexually assaulted by Officers Shane Beasley and

1)

Enrique Montenegro. During this assault while punching plastiff with a closed fist spelled out the name Boykin. Officer Beasley even stated after assault: "This is what women beaters gets at Hughes Unit."

9. Plantiff was assaulted on November 15. 2021 and June 1. 2022 is close proximity to the assault of Levida Boykin.

10. Plantiff was denied multiple meals. Written false disciplinary infractions all due to the assault of Mrs Boykin

11. Plantiff had his family contact T.D.C.J directors office on multiple occassions via email.

12. Unknown officials from the regional office responded to complaint of sister Teloria Hogg and mother Sandra Keverson in part stating that plantiff had refused to cooperate with an investigation. This is simply false.

13. Plantiff filed multiple grievances and sent personal letters to high officials in Region and on Hughes Unit.

14. Plantiff has a pending civil complaint as it relates to the incidents described here in styled Rickey McGee v. T.D.C.J director case number 6:22-cv-00380-ADA in the Western District of Texas

15. Finally after multiple O.P.I investigations, complaints from family members plantiff was again given a emergency transfer.

16. Plantiff was transferred **BACK** to Micheals Unit.

17. Before going into detail as it relates to specific events plantiff would like to describe his first hour at Micheal Unit.

18. Plantiff while on the transport bus noticed on his transfer file an large white paper with bold letters **NOTICE** below this notice plantiffs name Rickey McGee v. T.D.C.J Director and cause number. Under this heading there were paragraphs which when plantiff asked could he read were denied. Multiple officials at the Micheal

was grouped around reading this Notice and looking
through plaintiffs travel records. Some after walked
up to plaintiff and made threat's. One stated: "I got
you. We Know how to deal with you jailhouse snitches."
Another: "So you are the one they been talking about.
Women beater's gets No love IN this house". This threat
was made by a unknown SGT.

19. On June 6, 2023 plaintiff was ordered to strip
search, handcuffed IN order to speak with Captain
Brannan and Lt. K. Foust.

20. Upon arrival to office escorting officer was
told to leave by Lt. Foust.

21. Present also was SGT. Ruthledge.

22. Lt. Foust ordered: "Sit down". Lt. was visibly angry.

23. When plaintiff did not react fast enough Foust
pushed plaintiff, still handcuffed into a chair. Foust
for No reason slapped plaintiff IN the face.

24. Defendant Foust pushed plaintiff to the floor and
placed his knee into the back of plaintiffs Neck.

25. Defendant Foust is a very big man. He is around
6 feet 2 inches and weighs at least 350 lbs. Compa-
red to plaintiffs 5 feet 7 inches  155 lbs. weight.

26. This placement of defendant's knee into plaintiffs
neck prevented him from breathing resulting
IN him loosing conciousness.

27. Plaintiff was awakened to being kicked IN the
stomach, face and genitals by defendant Brannan.

28. Defendant Brannan stated: "If I get anymore
bullshit PREA complaints I promise Next time you
wont leave out this office alive".

29. Defendant Foust then sat plaintiff IN chair and
spit IN his face stating: "Bitch I cad fuck you
over anytime I want to. I can have a team come

in your cell and stick a riot baton up your ass."

30. Defendant Brannan stated: "We know all about your bullshit lawsuits you file. We know all about you and Mrs. Boykin."

31. Plantiff at this time is bleeding from the mouth onto his shirt and is delirious. Plantiff was under medication and feared having a seizure. Plantiff asked for medical attention and defendant Ruthledge stated: "Ask Mrs. Boykin. Think she would give a fuck."

32. Defendant Brannan stated: "We need to heal you up."

33. Plantiff was placed inside a holding cage right outside Lts. Office.

34. Defendants ordered plantiff to "strip".

35. Plantiff stated that he had just been stripped searched prior to exiting his cell in which defendant Brannan stated something to the effect: "Either you show us your asshole or we gas you and then take a look up there ourselves. The hard way."

36. Out of fear of further assault plantiff removed his clothing and submitted to a strip search.

37. Both defendants were laughing at plantiffs humiliation when stating: "Bend over. Now hold in that position.

38. Defendants made plantiff "Bend over" multiple times and made threats of physical harm. During this time other T.D.C.J officials were walking by including some women. Some of these officials were clearly amused at what they saw.

39. Defendants went back into the office where plantiff could hear them talking and laughing.

40. Fifteen to twenty minutes after this strip search plantiff saw, stopped a black male who identified himself as Officer Smith of the Office of Inspector General.

4)

41. Plantiff told defendant Smith of the assault with Foust and Brannan. Defendant Smith saw the blood on his shirt. Plantiff showed him the marks from handcuffs. The swollen finger. The loose of conciousness. Plantiff told defendant he needed to see medical.

42. Defendant Smith with a non-chalant attitude stated: "I really didnt want to hear this".

43. Defendant walked away without giving plantiff any help.

44. Minutes later defendant Brannan exited the office.

45. Fourty five minutes to a hour later defendant Mitchell was walking down the hallway when plantiff told him about the assault and unreported use of force.

46. Plantiff asked defendant to come closer in order to see the marks from the handcuffs and busted lip.

47. Defendant Mitchell stated: "Right now I am busy checking temerature. I'll get you medical."

48. Hour's later plantiff was told by defendant Foust that he would be moved to Special Observation Status (S.O.S) in order to "heal up". This would entitle plantiff to be re-housed in a cell naked, without any property with constant observation.

49. Plantiff asked Foust why he were being placed on SOS in which he replied: "Ask Mrs. Boykin".

50. At first plantiff refused this re-housing in which defendant Ruthledge and other officers began making threats of physical harm. Ruthledge had a gas canister threatening: "I'll gas your bitch ass."

51. Out of fear of assault plantiff submitted to hand restraints and escorted to SOS cell.

52. Plantiff was placed in a cell which was covered in feces, blood and gas from a previous use of force.

53. Plantiffs toilet was overflowed with human waste

5)

and his sink and toilet water was either turned off or inoperable.

54. Plaintiffs was naked. No property. No mattress. Plaintiff's cell was extremely cold. Plaintiff had to utilize a toilet already overflowed with human waste. Plaintiff was denied water, food, and tissue. Plaintiff was not allowed to shower.

55. Plaintiff stayed in these conditions from June 6, 2023 until June 13, 2023.

56. When asked by these officers whom were observing plaintiff why they weren't feeding or giving him water they simply replied: "Per Captain's orders." One officer stated: "I cant feed you man Brannan is watching the cameras. What did you do to him to make him so mad at you?"

57. On or about the date June 9, 2023 defendant Issah was making medical rounds. Plaintiff showed him the conditions he was living in. Showed him the injuries from the use of force. Told him of the urinating of blood.

58. Defendant Issah responded: "There is nothing I can do. You are on S.O.S."

59. On June 13, 2023 plaintiff spoke with defendant Lakin concerning getting medical treatment. This request by him was denied. Defendant stated: "You know you brought all this on yourself McGee. Keep your hands of women and you will be fine."

60. Plaintiff asked defendant Lakin what women where he referring to in which he responded: "Stop acting dumb. You know exactly who I'm talking about and what I'm talking about. Everyone knows about you and C.O. Boykin"

61. Plaintiff on June 13, 2023 was released from S.O.S and assigned by the countroom to cell 38 on C-pod. This area of the prison is known for it's trouble free

atmoshphere. Upon hearing of this Lt. Foust approached plantiff's cell and stated: "Now bitch you going to F-pod. There I can get your bitch ass shit down."

62. Defendant Foust with the pre-approval of Brannan changed plantiff's housing from C-38 to F-58. This move placed plantiff into a less desire able part of the prison where inmates were flooding, starting fires, getting gased and throwing bodily waste on one another.

63. On June 23.2023 while plantiff was housed on F-pod 58 cell defendant Foust stated to two O.J.T female officers: "That motherfucker in 58 cell is a snitch and child molester. All I seed is an excuse to bust his ass". He further began to encourage other inmates to harm plantiff by stating: "Anyone of you who bust this bitch ass child molester in his ass I got something for you. I give you my word."

64. For clarity purposes "bust in ass" as a prison term to refer to one doing physical harm to another including but not limited to, throwing scalding water on a inmate or officer, throwing bodily waste or coming out of cell and assaulting one with or without a weapon.

65. This incitement by defendant Foust resulted in plant.ff being labeled a "snitch" and "child molester". Multiple inmates made threats and attempts to harm plantiff. Plantiff lived in fear of officers and inmates while at the Michext Unit.

66. Plantiff had family members contact state representative, law office of Shasta Brown who om both contacted the unit warden relating to use of force and failure to provide Medical treatment.

7)

67. Plaintiff was given a "EMERGENCY transfer" due to the threats and harm to his physical safety.

# LEGAL CLAIMS

68. Plaintiff reallege and incorporate by reference paragraph one through sixty-seven.

69. Defendant T.D.C.J Director is at the top of chain of command and is responsible for the overall operation of each institution of which is comprised including the Michael Unit.

70. One core obligation is to implement policies and protect inmates.

71. T.D.C.J is a institutional entity that protects itself from top to bottom. There is a history of widespread abuse of inmates not only in general but especially those who exercise their rights to the courts. There is a history of widespread retaliation including physical abuse for these "jailhouse snitches".

72. Despite this awareness the director implemented a policy, custom or adopted the practice of indirectly exposing these "jailhouse snitches".

73. The policy or custom of placing a huge notice on plaintiff's travel folder including the fact that he is suing their top brass is readily available for all to see from the unit administration to the first year correctional officer.

74. The director knew of the assault on Officer Boykin. He knew that plaintiff's health and safety were in jeapordy. This was solely the reason for the emergency transfer from Michael to Hughes Unit.

75. The director on this transfer was the final decision

MARKER.

76. The director KNEW of the allegations of sexual abuse while at Hughes Unit for the fact he was a named defendant.

77. IN retaliation for filing a civil complaint against him the director intentionally and with reckless disregard for plaintiffs safety transferred plaintiff BACK into an environment where he KNEW was UNSAFE. HE sent plaintiff BACK to Michael Unit.

78. Without the director's approval this transfer doesn't take place.

79. In part due to the actions of the director plaintiff was denied, placed in inhumane conditions and denied medical treatment by his subordinates At Michael Unit.

80. There is direct liability for the director due to the fact. he KNEW that no subordinate of his likes a "jailhouse snitch" or one who litigates through the grievance system and counts.

81. The director failed to protect-train-supervise his subordinates. This failure on the part of the director was intentional. This failure was directly the cause of plaintiffs injuries, intentional infliction of emotional distress

82. Director's actions-inactions-violated plaintiffs rights under the First, Fifth, Eighth and Fourteenth Amendment to the U.S. Constitution and caused plaintiff pain, suffering, physical injury, mental and intentional infliction of emotional distress. Also state law claim I.I.E.D

83. Defendant Warden Marshall failed to protect-train-supervise and discipline his subordinates defendants Foust and Brannan. HE was fully aware of Foust and Brannans previous abuse of other prisoners in custody. Brannan and Foust were both notorious for abusing

prisoner's with excessive force. Despite this awareness and prior history of abuse defendant Marshall promoted defendant Brannan to captain. But for this promotion defendant Brannan would not have investigated PREA complaint nor would he have had the authority to place plaintiff on S.A.S status and place plaintiff in the inhumane conditions described herein.

84. Defendant Marshalls actions - or inactions - violated plaintiff's U.S. Constitutional rights under the First, Fifth, Eighth and Fourteenth Amendment resulting in physical pain, suffering, injury, mental and intentional emotional distress.

85. Defendant Warden Mitchell failed to protect - train - supervise and discipline his subordinate defendants. He too knew of the history of abuse of inmates from Brannan and Foust. With this knowledge coupled with the fact that you have a inmate who is bleeding from face onto shirt telling you that he has just been beaten by officers you know have a history of abuse Warden Mitchell has a duty to protect. He failed. This failure placed plaintiff at even greater risk of injury. After being beaten, humiliated he was placed in a cold, dirty cell, naked, with no mattress and no property. Plaintiff was denied the basic necessities of life. He was denied his psychiatric medication and seizure medication placing him at even greater emotional risk.

86. Plaintiff told defendant Mitchell that he had lost consciousness and thought he'd might have had a seizure. Defendant Mitchell stated: "I'm busy checking temperature. I'll get you medical". A reasonable person would know that if someone lost consciousness due to having a seizure then that one should be seen by medical immediately. Although he said: "I'll get you

Medical." Medical never came.

87. Defendant Mitchell is the Warden in charge of care for inmates who are in a Mental Health Therapeutic Program at Michael Unit. The defendant knew that a very majority of inmates in this program were challenged mentally. Plaintiff was among those inmates in this MHTP. Plaintiff was under psychiatric care for anxiety and depression. The events of June 6.2023 was exacerbated this anxiety and depression which required further treatment.

88. Defendants actions - or inactions - violated plaintiffs rights under the First, Fifth, Eighth and Fourteenth Amendment to the U.S. Constitution, and caused plaintiff physical pain, suffering, physical injury, mental and emotional distress.

89. Plaintiff is also making a state law claim of intentional infliction of emotional distress against defendant Mitchell.

90. Defendant's Brannan and Foust physically and sexually assaulted plaintiff in retaliation for filing a PREA complaint and previous assault of Officer Boykin. Furthermore, these defendants subjected plaintiff to a strip search that was for harassment, intimidation and humiliation. The defendants knew that inmates are to be stripped searched everytime exiting their cells, as per policy. The defendants knew that upon strip search plaintiff was handcuffed and escorted by an officer to U.S. Office. The defendants knew that it was impossible for inmate to obtain any contraband yet still they forced him to strip search in front of Officials walking by some of the opposite sex. There was no penological purpose in the actions of these defendants for this unreasonable strip search.

91. Both defendants BRANNAN and Foust were supervising officials in MHTP. They were aware to inmates in their care who had mental health issues. Yet they chose to beat, humiliate and place plantiff in conditions that were clearly inhumane. They chose to deny him medical treatment after they knew he had lost conciousness during their attack.

92. Plantiff is also making a state law claim of intentional infliction of emotional distress against defendants Foust and BRANNAN

93. Defendants Foust and BRANNANS actions - or inactions - violated plantiffs rights under the First, Fifth, Eighth, and Foorteenth Auendment to the U.S. Constitution, and caused plantiff physical pain, suffering, physical injury, mental and extreme emotional distress. Defendants actions also violated plantiffs rights under the Foorth Auendment in relation to the unreasonable strip search.

94. Defendant Lakin violated plantiffs rights to be free from retaliation and was deliberately indifferent to plantiff's serious medical need. The defendant after speaking with plantiff was aware of the being beaten, losing conciousness and urinating blood. The defendant was fully aware of plantiffs situation as it related to the inhumane living conditions for the fact plantiff was at that time living in those conditions. The defendant failed to protect, failed to get plantiff medical attention. His only response to this request was: "Maybe you should keep your hands off women". The incident with C.O. Boykin was the driving force behind defendant not giving plantiff medical treatment.

95. Defendant Lakin was also a supervisor in MHTP. He knew that there were those under his care who had

MENTAL ISSUES. He KNEW that to deny medical treatment and basic necessities of life would only excacerbate those mental issues. He chose to risk plantiff to further injury both physically and mentally.

96. Plastiff is also making a state law claim of intentional infliction of emotional distress against defendant Lakin.

97. Defendant Lakin actions - or inactions - violated plastiff's rights under the First, Fifth, Eighth, and Fourteenth Amendment to the U.S. Constitution and caused plantiff physical pain, suffering, physical injury, mental and extreme emotional distress.

98. Defendant Issah of all the defendants know that plastiff has a right to medical care. He knows that if medical officials does not provide those needs those needs will not be met. Plantiff spoke face to face with defendant Issah and told him that he had been beaten, lost conciousness due to possible seizure, was urinating blood. Plantiff told this medical official that he was not being fed, given water and was not recieving his medication for anxiety, depression and seizure's. This medical official in response stated: "There is nothing I can do for you. You are on S.O.S."

99. Plantiff is also making a state law claim of intentional infliction of emotional distress against defendant Issah.

100. Defendants Issah actions - or inactions - violated plantiffs rights under the First, Fifth, Eighth and Fourteenth Amendment to the U.S. Constitution and caused plantiff physical pain, suffering, physical injury, mental and extreme emotional distress.

101. Defendant Ruthledge failed to protect and intervene. She was present when defendants Brannan and

Foust beat, humiliated and denied plaintiff medical attention in order for him to "heal up". She was a willing participent in placing plaintiff in conditions she knew where inhumane. She was the one with a gas canister in hand threatened to: "gas your ass". Although she had the opportunity to protect plaintiff from the physical and mental abuse she stood by and watched. She was fully aware that plaintiff was not being fed and given water. She was fully aware that plaintiff was not being given medical attention. She was fully aware of the conditions plaintiff was living in for the fact she was a supervisor of inmates on S.Q.S status.

102. Plaintiff is also making a state law claim of intentional infliction of emotional distress against defendant Ruthledge.

103. Defendants Ruthledge actions - or inactions - violated plaintiff's rights under the First, Fourth, Eighth, Fourteenth Amendment to the U.S. Constitution and caused plaintiff physical pain, suffering, physical injury and extreme emotional distress.

104. Defendant Smith of the Inspector General Office (aware) failed to protect plaintiff. He was fully aware of the allegations of being beaten by defendant's Brannan and Foust in relaliation for an assault of a fellow correctional Officer. He was fully aware of the blood on plaintiffs shirt, swollen finger, lose of conciousness. He was fully aware of the Micheals Unit history of assaults on inmates by staff. Defendant Smith is a police officer obligated to protect inmates from staff assault. He had at that point enough probable cause to at least

to question why a use of force went unreported. He had at that point enough factual evidence that plaintiff need medical attention and wasn't recieving it. Despite all of this Officer Smith stated before walking away: "I really didn't want to hear this." This failure to intervene and protect plaintiff resulted is h.m being subjected to inhumane conditions, refusal of multiple meals and water. This failure to protect placed plaintiff at a more substantial risk to his physical safety and his mental health.

105. Plaintiff is also making a state law claim of intentional infliction of emotional distress against defendant Smith.

106. Defendant Smith actions - or inactions - violated plaintiff's rights under the First, Fifth, Eighth and Fourteenth Amendment to the U.S Constitution and caused plaintiff physical pain, suffering, physical injury and extreme emotional distress.

# PRAYER FOR RELIEF

Wherefore, plaintiff respectfully pray that this court enter judgement:

107. Granting plaintiff a judgement of declaration that the acts and omissions described herein violate his rights under the Constitution and laws of the United States, and

108. A preliminary and permanent injunction ordering defendant T.D.C.J Directory to immediately cease placing a notice on his travel file and in his records when officials type up his name via T.D.C.J computer, that he has a pending civil complaint against T.D.C.J.

109. Granting plantiff compensatory damages in the amount of 1 million, 1 hundred and 10 thousand dollars (1,110,000) against T.D.C.J Director.

110. Granting plantiff compensatory damages in the amount of 7 hundred, and seventy-seven thousand dollars ($777,000) against defendants Mitchell and marshall jointly and severally.

111. Granting plantiff compensatory damages in the amount of 7 hundred, and seventy-seven thousand dollars ($777,000) against defendants Foust and Brannan jointly and severally

112. Granting plantiff compensatory damages in the amount of seventy-seven thousand dollars ($77,000) against defendants Lakin, Issah, and Ruthledge jointly and severally

113. Granting plantiff compensatory damages in the amount of 1 hundred and eleven thousand dollars ($111,000) against defendant Smith

114. Granting plantiff punitive damages in the amount of 1 million, 1 hundred and 10 thousand dollars($1,110,000) against T.D.C.J Director

115. Granting plantiff punitive damages in the amount of 7 hundred, and seventy-seven thousand dollars ($777,000) against defendants Mitchell and Marshall jointly and severally

116. Granting plantiff punitive damages in the amount of 7 hundred, and seventy-seven thousand dollars ($777,000) against defendants Foust and Brannan jointly and severally

117. Granting plantiff punitive damages in the amount of seventy-seven thousand dollars ($77,000) against defendants Lakin, Issah and Ruthledge jointly and severally

16)

118. Granting plantiff punitive damages in the amount of 1 hundred and eleven thousand dollars (111,000) against defendant Smith.

119. Plantiff pray that the court exercise supplemental jurisdiction over claims of intentional infliction of emotional distress against each defendant named herein.

120. Plantiff seek a jury trial on all issues triable by a jury.

121. Plantiff seek recovery of cost in this suit and;

122. Any additional relief this court deems just proper and equitable.

123. Plantiff is submiting a declaration in support of his request for injunction relief.

August 1. 2024

Respectfully submitted,

Rickey L. McGee

# VERIFICATION

I have read the foregoing complaint and hereby
verify that the matters alleged there in are false,
except as to matters alleged on information
and belief, and, as to those I believe them to
be true. I certify under penalty of perjury
that the foregoing is true and correct.
Executed at Lovelady Texas on August 1, 2024

Rickey L. McGee

(8)

BRIEF IN SUPPORT
OF CIVIL COMPLAINT

# DECLARATION

Rickey L. McGee hereby declares:

I have two civil complaints pending in which T.D.C.J Director is a named defendant. Civil Number 6:23-cr-111 in the Eastern District of Texas; Civil Number 6:22-cv-00380 in the Western District of Texas

In the year 2022 I was transferred to Micheal Unit. For the first time on my travel folder there was a white standard sized piece of paper taped to the front. In bold black letters were the word **NOTICE** Under this word notice was the styled civil complaint <u>Rickey L. McGee v T.D.C.J Director 6:22-cv-00380-ADA</u> Under this were maybe five paragraph's that I were unable to read due to distance. However, on the date of my arrival at Micheal Unit multiple staff gathered around and was reading whatever was under this notice heading. I began to recieve threats and called "Snitch" from Officer's whom I had never seen a day in my life. Ultimately, in due part to filing civil complaint 6:22-cv-00380-ADA against T.D.C.J Director I was beaten and denied medical attention on June 6.2023 by the defendant's Named in Accompanying civil filed as a part. I know that my filing of said civil action

played a part in my being beaten for the fact that Defendant Brannan stated during the assault: "We know all about your bullshit lawsuits you file. We know all about you and Mrs. Boykin." I had not had any interaction with the defendant up until June 6, 2023. Furthermore, he wasn't one of the officials whom I saw reading the notice heading on my arrival to Michael Unit. How did he know the specifics of my civil complaint? I would conjecture from the notice taped to my travel folder.

Due to imminent threat to my physical safety I was given an "Emergency transfer" to Ferguson Unit. This notice sign followed along with my travel folder. Officials at that Unit read whatever was in paragraphs. Some made subtle threats. Some called me "jailhouse snitch". Some denied me meals. I was eventually transferred again after being given a "Emergency transfer" to my current assigned Unit. This transfer was the direct result of Officer's labeling me a "snitch" in front of inmates. I was extorted by inmates and had to be transferred due to O.P.I.

I was transferred to Wainwright Unit February of 2024. My travel folder (notice included) accompanied me. The label "jailhouse snitch" also followed close by my side. I have been subjected to retaliation for filing civil complaint against the Director at this Unit also. Among some named Official's are: Sgt. Jonnie Lone, Officer Perkins, Officer Riley. I have written grievances as it relates to the threats, to no avail.

On or about March 1, 2024 I spoke with Warden Muniz concerning the threats of physical harm in which he responded: "Sometimes we have to lay in the bed we make for ourselves".

On or about March 8, 2024 I spoke with Warden Blackshire relating to threats and he simply walked by.

On July 26, 2024 at the approximate time 12:30 pm I was told I had a scheduled call with my attorney Reagan J. Rundio who is assigned to civil No 6:22cv-00380 Lt. Houston attempted to do the call via speaker phone. I told him that this is a private call in which he became angry. Lt. Houston walked up to me while I was handcuffed and slapped me in the face. He then stated: "We know all about you suing the Director. You can stick that lawsuit up your asshole. We are going to bust your head open for filing that lawsuit". Lt. Houston refused my access to my attorney on that day saying either I talk on speaker or I dont talk at all.

I firmly believe that the placing of the notice sign on my travel file resulted in my being physically abused. I firmly believe that this notice sign was with the approval of T.D.C.J Director. I have been in and out of state prisons for decades and have never seen any notice sign taped outside file folder.

I am afraid for my life at this Unit. All the official here know about my status as a "jailhouse snitch" I am asking the court to intervene. Due to the urgency I will ask the court to issue a Temporary Restraining Order and a permanent Injunction. If the court does not step in to address these constitutional violations the abuse will continue.

PAGE 3

I will ask the court to order the defendant T.D.C.J Director to: 1) Immediately to remove the notice sign off of his travel file on a permanent basis; 2) For him to order his subordinates here at the Wainwright Unit that has knowledge of a pending civil complaint against him to immediately cease to physically harming, threatening or retaliating in any form Plaintiff in this civil action; 3) For him to order his subordinates here at Wainwright Unit that all calls between plaintiff and his attorney Regan J. Rundio are to be conducted privately and not as speaker phone in their presence. That this call is to be conducted by an official with the rank of a Captain or above and NOT Lt. Houston; 4) For him to not transfer plaintiff to a less desirous Unit in retaliating for the filing of this civil complaint and that any transfer to a less desirous prison will be perceived as retaliation.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Lovelady Texas on August 1, 2024

Rickey McGee

PAGE 4